UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DONALD C. HALE** | **CIVIL ACTION NO. 3:12-cv-0300** |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **BILLY W. HARRISON, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff, Donald C. Hale, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 20, 2012. Plaintiff is a detainee at the Morehouse Parish Jail (MPJ), Bastrop, Louisiana. He complains that he is being denied appropriate medical treatment for injuries he sustained in a traffic accident in October 2011. He sued Warden Billy W. Harrison, Nurse J. Streeter, and Morehouse Sheriff Mike Tubbs; he prayed for compensatory and punitive damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

Sometime in the early morning hours of October 16, 2011, Diana Pinner of Bastrop complained to the Tallulah Police Department that plaintiff "... took her vehicle (a 2007 Toyota pickup...) without her permission or knowledge and wrecked in the bayou beside the Smoke Shop in Tallulah..." [Doc. 1-2, p. 13] According to the accident report prepared that day, plaintiff was involved in a single vehicle accident but he left the scene of the accident by the time the investigating

officer arrived. He was subsequently arrested by the Madison Parish Sheriff's Department and transferred to the Madison Parish Jail. According to the accident report, plaintiff suffered no injuries as a result of the accident. [Doc. 1-2, pp. 9-12]

Sometime later on October 16, 2011, plaintiff's father, Donald G. Hale, went to the Madison Parish Jail where he met his son. He observed that plaintiff's speech was slurred and that upon arriving back home, plaintiff slept all day. According to Mr. Hale, once plaintiff awoke from his sleep, "he was confused." According to Mr. Hale, plaintiff "never sleeps that long." Mr. Hale also noted cuts and bruises on plaintiff's face. [Doc. 1-2, p. 2]

On the following day, October 17, 2011, at 9 a.m., plaintiff's grandmother, Jeanette Andrepont picked plaintiff up from his father's house and brought him to her residence. According to Ms. Andrepont, plaintiff was "very disoriented, confused, and barely talking." He advised his grandmother that he had been involved in a traffic accident on October 16. She noted "a large lump on his head" and plaintiff complained to her of headache. She gave him Tylenol and fed him a biscuit and sausage. According to Ms. Andrepont, plaintiff slept from 10:30 a.m. until 8:00 p.m. When he awoke he complained of feeling sick and confused and he remained "confused" and "disoriented" until at least 10:00 p.m. when his mother, who had been visiting, departed. [Doc. 1-2, p. 3]

Plaintiff claims that he was booked into the MPJ on October 17, 2011. He notified Sgt. Woods, the Shift Supervisor, that he had been involved in a motor vehicle accident on October 16, 2011 and sustained "... head trauma, blurred vision, ringing of ears, periodic hearing loss, jaw soreness, neck and leg pain..." On October 21, 2011, he was examined by Nurse J. Streeter who refused "... any and all medical attention exception for left knee..." According to plaintiff, he was placed on a "follow-up medical call out" but was never seen. Further, he claimed that, as of October

22, 2011, he was "refused medical attention." [Doc. 1, ¶IV]

According to the prison's "Resident Transaction Details" accompanying plaintiff's *in forma pauperis* application, he was provided mediproxen[1] on October 21, 2011. [Doc. 2, p. 8]Further, in a petition for *habeas corpus* filed on February 23, 2012, he alleged that he received "mild" pain medication for two weeks and, that he was seen by "... the attending Dr..." on October 21, 2011. [See Civil Action No. 3:12-cv-0496 at Doc. 1, p. 5]

On December 16, 2011, plaintiff complained to Nurse Major of "internal pain" from the October 16 accident. Plaintiff requested a bottom bunk because climbing causes pain to his left hip, left knee, and left ankle. Nurse Major refused further examination, a bottom bunk pass, referral to a physician, a left knee brace, and a left ankle brace. [Doc. 1-2, p. 4] According to plaintiff, Nurse Major terminated the visit and plaintiff returned to his dormitory. [Doc. 1-2, p. 5]

*Law and Analysis*

*1. Screening*

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from

---

[1] Mediproxen or Naproxen is used to relieve pain from various conditions such as headache, muscle aches, dental pain, menstrual cramps, or arthritis. It is also used to reduce fever and relieve minor aches and pain due to the common cold or flu. This medication is known as a nonsteroidal anti-inflammatory drug (NSAID). It works by blocking the body's production of certain natural substances that cause inflammation. This effect helps to decrease swelling, pain, or fever.

Web MD, Drugs & Supplements, at
http://www.webmd.com/drugs/mono-582-NAPROXEN+220+MG+-+ORAL.aspx?drugid=21369&drugname=Mediproxen+Oral&source=0

such relief. 28 U.S.C. §§1915A and 1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's original complaint set forth his claim and the basis for his cause of action; he has filed exhibits and affidavits which taken together provide additional details and facts in support of his claims for relief. He need not be permitted further amendment because his allegations – taken as true for the purposes of this report –  fail to state a claim for which relief may be granted.

*2. Medical Care*

It appears that plaintiff is a pre-trial detainee and not a convicted prisoner. Because they are presumed innocent, pre-trial detainees have a constitutional right to be free from punishment. *See Bell v. Wolfish*, 441 U.S. 520, 534-37, 99 S.Ct. 1861, 1871-73, 60 L.Ed.2d 447 (1979). Accordingly, a pre-trial detainee's claims of unconstitutional conditions or circumstances are analyzed under the Fourteenth Amendment's guarantee of due process of law as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which applies only to convicted inmates. *See id.* at 535 n. 16, 99 S.Ct. at 1872 n. 16; *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996).

Civil rights complaints, when filed pursuant to Section 1983 by pre-trial detainees, are analyzed as either conditions of confinement or episodic acts resulting in the deprivation of constitutional rights without due process. A "conditions of confinement" case raises a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement. *See Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997) (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir.1996). In such cases, the constitutional harm is caused by the condition itself. "This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable

conditions." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997). When a pretrial detainee challenges the general conditions of confinement, as opposed to particular acts or omissions, a constitutional violation exists only if it appears that the complained of conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective. *See Hare*, 74 F.3d at 640 (citing *Bell*, 441 U.S. at 538-39, 99 S.Ct. at 1873-74); see also *Scott*, 114 F.3d at 53 (citing *Hare* ).

On the other hand, if the detainee's complaints are based on particular acts or omissions of one or more officials, the action is characterized as an "episodic act or omission" case. *See Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir.1999); *Hare*, 74 F.3d at 645. Under this analysis, a detainee's due process rights are violated only if the defendants acted with deliberate indifference to a substantial risk of serious harm which resulted in injury. *Wagner v. Bay City,* 227 F.3d at 324 (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996) *(en banc)*; see also *Edwards v. Johnson*, 209 F.3d 772 (5th Cir. 2000) ("To prove an underlying constitutional violation in an episodic acts case, the detainee must establish that the official acted with subjective deliberate indifference."). Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. *Id.* Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Id.* This deliberate indifference standard is identical to the standard used to analyze medical care claims affecting convicts and arising under the Eighth Amendment.

Thus, whether the case arises under the Fourteenth Amendment or the Eight Amendment, the deliberate indifference standard must be employed. In either case, deliberate indifference means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245

F.3d at 458-59.  Thus, "... the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

In addition, the alleged deprivation must be "sufficiently serious," which means that "the inmate must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 847 (emphasis supplied). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "[T]he plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*.  (internal quotation marks and citation omitted). "[M]ere negligence, neglect, or medical malpractice" do not constitute deliberate indifference. *Varnado*, 920 F.2d at 321. Even "gross negligence" does not establish deliberate indifference. *Hernandez v. Tex. Dep't of Prot. and Reg. Servs.*, 380 F.3d 872, 882 (5th Cir. 2004).

The available evidence suggests that plaintiff was not injured to the extent he now claims. According to the accident report, he sustained no injuries. Further, it appears that he remained free for a period in excess of 24 hours between the time he was released from custody in Madison Parish

and then later taken into custody in Morehouse Parish. During this time he was in the company of either his father, his grandmother, or his mother, yet he was not deemed so seriously injured as to require medical attention during that time. Indeed, the treatment provided by his grandmother – Tylenol for pain – was almost identical to the treatment he was afforded at MPJ – mediproxen. In other words, the facts alleged do not suggest there was a substantial risk of serious harm with regard to plaintiff's medical condition.

Plaintiff has not demonstrated deliberate indifference; indeed, at worst, he has demonstrated that his condition was mis-diagnosed by health care professionals at MPJ. However, unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *Gobert v. Caldwell*, 463 F.3d 339, 346. Plaintiff disagreed with the diagnosis and treatment regimens prescribed for him; however, disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985). Diagnosis and treatment decisions are a classic example of a matter best left to the medical judgment of health care professionals. *Gobert*, 463 F.3d at 346. The facts alleged simply do not establish deliberate indifference and therefore plaintiff's complaint fails to state a claim for which relief may be granted.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. §§ 1915 and 1915A.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14)days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, March 15, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE